UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK T. FORSYTHE,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | Case No. ED CV 07-454-PJW<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for disability insurance benefits and supplemental security income. For the reasons set forth below, the Agency's decision is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

This is the third time that this matter has come before the Court. Plaintiff's application for disability benefits, alleging disability since November 1, 1997, was denied by the Agency on April 19, 2001. (Administrative Record ("AR") 10-15.) Plaintiff appealed. On August 8, 2002, this Court remanded the case (based on the parties' stipulation) for a new hearing and further development of the record.

(AR 291-94.)  Meanwhile, on April 15, 2002, Plaintiff filed a new application for supplemental security income.  Ultimately, the cases were joined.  (AR 278.)  In its remand order of December 26, 2002, the Appeals Council directed the Administrative Law Judge ("ALJ") to give further consideration to lay witness testimony, evaluate the October 1999 opinion of Dr. Beler, Plaintiff's treating psychiatrist, update the record, and further consider Plaintiff's residual functional capacity in light of the treating opinions and other medical source statements.  (AR 296-98.)

After a new hearing before the same ALJ on remand, the ALJ again denied Plaintiff's applications in a decision dated December 3, 2003. (AR 278-84.)  Plaintiff appealed.  This Court reversed and remanded the case on July 27, 2005, finding that the ALJ had not complied with the Appeals Council's instruction to obtain medical source statements from treating physicians and did not properly consider the diagnoses and functional capacity assessments provided by treating sources Dr. Beler and Dr. Montenegro.  (AR 640-47.)

On remand, a different ALJ held two more hearings and issued a decision, again denying benefits.  (AR 449-58.)  Although the ALJ found that Plaintiff had severe impairments consisting of degenerative arthritis involving the knees and right wrist, asthma, attention deficit disorder, depressive disorder, not otherwise specified, obesity, hyperlipidemia, and gastroesophageal reflux disease, the ALJ determined, consistent with the testimony of a vocational expert, that Plaintiff's residual functional capacity would permit him to work. (AR 452-57.)  Plaintiff, again, appealed to this Court.

Plaintiff raises three claims of error, all of which relate to the ALJ's consideration of the mental health evidence.  In his first

claim, Plaintiff contends that the ALJ failed to properly consider a 1999 diagnosis by Dr. Belen, Plaintiff's treating psychiatrist. (Joint Stip. at 3-5.)  In his second claim, Plaintiff contends that the ALJ ignored a mental assessment by "examining" psychiatrist Dr. Hurwitz.  (Joint Stip. at 10-11.)  And, in his third claim, Plaintiff contends that the ALJ failed to properly consider a diagnosis and Global Assessment of Functioning ("GAF") score by his treating clinician.  (Joint Stip. at 12-13.)

In the Court's July 27, 2005 Memorandum Opinion and Order, it noted the Appeals Council's remand instruction that the ALJ must "consider the diagnoses endorsed by ... Dr. Beler and the functional capacity assessment provided by treating source Guia Montenegro, M.D., and determine whether those reports are consistent with each other and with the underlying clinical progress notes."  (AR 646.)  The Court then noted that the ALJ's treatment on remand of this evidence was "sparse" and that it "ignore[d] an important aspect of the Appeals Council's mandate ... The omission matters because the Appeals Council also required the ALJ to explain the weight he gave the treating source opinions.  The ALJ did not do this, either."  (AR 647.)

Unfortunately, the ALJ's latest decision does little to rectify the earlier omissions.  The ALJ's assessment of the medical evidence of Plaintiff's mental impairments with respect to the period between October 1999 and September 2004 is limited to the following:

> As noted in the preceding decisions in this matter, the medical evidence of record at that time showed [Plaintiff] had started mental health treatment in October 1999 for what was diagnosed as attention deficit hyperactivity disorder and anxiety and depressive disorders, not otherwise

     specified, that the diagnoses were soon changed to bipolar affective disorder and polysubstance dependence disorder, and that by November 2000 his condition improved and was stable with counseling and medication despite the apparent ongoing use of alcohol ... The medical evidence of record submitted in relation to the current proceedings, as it relates to the period covered by the preceding decisions, is duplicative and otherwise cumulative of the evidence of record at the time of the preceding decisions, and certainly does not reflect any other significant chronic physical or mental problems.

(AR 452-53.)

In other words, despite being specifically directed by this Court to heed the Appeals Council's command to consider the treating physicians' diagnoses and functional capacity assessments and to explain whether those treating source statements were consistent with the remaining medical evidence, the ALJ relied on the previous ALJ's decisions, which had been reversed, to gloss over the various medical opinions.  This was error.

Defendant contends that "the ALJ appropriately developed the record, gathering and analyzing medical evidence developed over the last eight years."  (Joint Stip. at 6.)  A review of the ALJ's decision belies this contention.

As noted, the ALJ failed to properly consider Dr. Belen's diagnosis.  (He found that Plaintiff suffered from ADHD disorder, depressive disorder, and anxiety disorder, and had a GAF of 47.  (AR 310.))  Additionally, the ALJ did not discuss the Psychiatric Review Technique Form completed by state agency reviewing physician Dr.

Hurwitz on June 6, 2000, which indicated that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace, (AR 211), as well as moderate limitations in his ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with others; to interact with the general public; to accept instructions from supervisors; and to respond appropriately to changes in the work setting. (AR 213-14.)

Nor did the ALJ discuss the psychiatric evaluation performed by the consultative, examining psychiatrist, Dr. Smith, on December 7, 2000, (AR 255-61), or determine whether it was consistent with treating psychiatrist Dr. Montenegro's March 14, 2001 opinion, in which he concluded that Plaintiff had marked limitations in numerous work-related abilities. (AR 265-66.) The ALJ also failed to consider the psychiatric evaluation by consulting examiner Dr. Damerla on July 12, 2003, which found that Plaintiff was moderately impaired in various work-related functions and severely impaired in his ability to relate to and interact with supervisors and the public. (AR 408-16.) This evidence, at the very least, undermines the ALJ's finding that "by November 2000 [Plaintiff's] condition improved and was stable with counseling and medication despite the apparent ongoing use of alcohol," (AR 452), and that the medical evidence "as it relates to the period covered by the preceding decisions ... certainly does not reflect any other significant chronic ... mental problems." (AR 453.)

Although an ALJ need not discuss every piece of evidence in the record, *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), here, the ALJ not only failed to analyze reports by Plaintiff's

treating and examining physicians in the face of clear directions to do so from this Court and the Appeals Council, he also erroneously relied on previously rejected administrative decisions as a substitute for that analysis.

Defendant contends that the ALJ was entitled to rely on the testimony of medical expert Dr. Saltz in making his residual functional capacity determination.  (Joint Stip. at 8.)  Although "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it," the ALJ must "'set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).  As discussed above, the ALJ did not fulfill that obligation here, but, instead, relied on previous decisions, which were themselves reversed for failure to completely discuss or develop the medical evidence from Plaintiff's treating physicians.[1]

In sum, the ALJ's failure to correct the errors of the earlier decisions by assessing the evidence of Plaintiff's mental impairments from treating and other sources and determining the weight to be given that evidence mandates reversal.  Because the record remains undeveloped with respect to these opinions, the Court is not in a

---

[1] Although Dr. Saltz briefly referred to Dr. Smith's report at the hearing, that was only in connection with Plaintiff's alleged alcohol use at the time.  (AR 491.)  Indeed, the ALJ agreed that the report showed "only moderate drinking."  (AR 491.)  Otherwise, Dr. Saltz did not refer specifically to any treating or examining reports prior to 2004.

position to say with certainty whether the medical and other evidence compels the conclusion that Plaintiff is disabled under the regulations. Thus, remand for an award of benefits is not justified. *See Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). Instead, remand for further proceedings is necessary to enable the ALJ to address the opinions of Plaintiff's treating and examining psychiatrists, as discussed above, to determine what weight to give those opinions, to determine whether those opinions are consistent with the other evidence in the record, and then to conduct any further proceedings that may be necessary.

IT IS SO ORDERED.

DATED:   September  10 , 2008.


_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-CLOSED\Closed-Soc Sec\FORSYTHE, P 454\Memo_Opinion.wpd

7